The opinion of the Court was delivered by
Withers, J.
Without recapitulating the facts which appear in the brief, we shall proceed to consider the questions that arise on them.
The first is, was J. B. Boyd authorized to bind the defendants, according to the law of agency, by the execution of the *529 notes that are the subject of this action? As between Boyd and his principals, the defendants, he had no such authority; for, as between such parties, the agreement put in evidence stipulated that as a clerk, Boyd was employed to purchase goods for a sum in cash, placed in his hands by the defendants, “ and to conduct a mercantile house in the village of Lancaster upon the cash system.” If we look to the ordinary import of these last words, Boyd would be thereby restricted to the duty of both buying and selling for cash only. It would not be on a cash system, if the one or the other was done upon a credit. Nor can it be said to be impracticable to do both, or either, for cash only. If we consider the natural motive to be inferred from the restrictive words, as moving the defendants, we must perceive that it was especially interesting to them to withhold from Boyd the power, so dangerous in all agencies, to pledge their credit in purchases. Such a power they could least supervise, and check in any particular instance, while the abuse of selling upon trust it was far more convenient to the principals to detect and restrain ; for they reserved the right to inspect the books at any time, and to close the concern at any time when a majority might see fit; so that the argument is stringent to force upon us the interpretation of the agreement as a prohibition to Boyd of buying on the credit of his principals.' Boyd’s conduct, in the outset, reinforces the confidence which we feel in such construction ; for when he first went to Charleston to provide a stock of goods, he went to lay out the $1,500 and no more; and said to the plaintiffs themselves, that he had so much money to expend, and beyond that he could not go; and he testified, expressly, that he exceeded his authority in executing the notes, and concealed his acts from the defendants. Whether, at that time, he disclosed to the plaintiffs the fact of his agency, or, if so, the character and extent of it, the names'of his principals, and so forth, does not appear. In about five months after his appointment, he executed a note signed “J. D. Mcllwain per J. B. Boyd, agent,” in favor of plaintiffs, upon which he afterwards made a payment. In less than a year after the date of the *530 first, he executed another note, and in about five months after the date of the latter, a third note, in favor of the plaintiffs ; and during all this time a balance remained unpaid upon the first. At the date of this first note, at least, the plaintiffs knew he was an agent, and the name was disclosed of a principal to whom they could have applied for information. If Boyd exhibited the agreement that gave - existence to his agency, they saw he could not deal on credit; and if he did not, they were put on enquiry, according to the dictates of reasonable prudence, as to the character and extent of his agency — the more reasonable for them in consideration that he had told them, at first, he could not go beyond his money then in hand. That, in the meantime, between the date of the agreement with Boyd and the date of either of the notes, the principals, or either of them, had done anything, in pais, to enlarge Boyd’s authority as to third persons, or as to these plaintiffs in particular, so as to authorize him to bind them by note, (and such they might have done by acts sufficient thereunto,) there is no evidence to show. A previous authority, therefore, to execute these notes, the defendants did not give, according to the evidence, and the circuit Court was right in refraining from instructing the jury that they did.
The second and remaining question involves the doctrine of ratification. Though no instruction to the jury is made matter of complaint, in this Court, yet it has been urged that a leaning of the Judge presiding, adverse to the plaintiffs, upon this inquiry, was to be inferred by, and was perceptible to the jury; while the charge upon this point is reported. This Court cannot overrule a result upon circuit on such a ground. Whatever may be the individual opinions of members of this Court, one or all, as to what is sometimes called the moral justice of a cause, or although the Court, or members of it, may think they would otherwise resolve the facts, if in the jury box, yet no point of law arises out of it, and it opens a province of differences of mere speculative conjecture, of disputation' and doubt, into which an appellate tribunal ought not to stray, unless most *531 manifestly the ends of justice would else be defeated. Where the law is properly expounded, the facts fairly exhibited, and the leaning of the Judge is the question, it is enough for us (in civil cases, at any rate,) to know that the jury have been left free to reason to their own conclusion.
It must be admitted that this is not a case of express or positive confirmation of the agent’s act. The facts on which the inquiry rests, are so far subject to different interpretations, that the office of the jury becomes indispensable. We have examined the instructions to the jury, on this subject, and can find nothing to condemn. It was not illiberal law for the plaintiffs, when the jury were told, that a party to be charged by reason of ratification should be shown, to have been “ acquainted with the transaction — that the case must be fairly and intelligibly before him, or that he must be shown to have had such fair opportunity to know it, as to justify the inference that he did know.” This is the more manifest when we turn to authors on agency, and find it advanced that the principal is bound who ratifies “ after full knowledge of the transaction; ” and this is said touching contests between principal and agent, and principal and third parties. It was well- enough to say, that the jury might inquire whether the defendants had a fair opportunity to be acquainted with the fact in question, for it might be the basis of strong observation in argument, if it appeared, that a principal, reserving- the full right of inspecting the business of an agent, saw upon his shelves $>5,000 worth of goods, for example, when he had supplied only $500 to buy them. The argument would take a different hue, if the fact should be, that inconsiderable surplus additions were occasionally, and by picce-meal introduced, in the course of an active business, not exceeding the value of a reasonable estimate of cash profits— and this by a clerk, or agent, who was studiously concealing his dealing upon credit; and who, it might be, was abstracting the goods or money of the principal, and supplying the same by an abuse of his authority, practised on the easy, negligent acquiescence of third persons — resulting in the complete decep *532 tion of even a vigilant principal. We do not, however, desire to enlarge upon this matter, because it is manifest that the addition or subtraction of a single fact may change the face of a case, proceeding upon the question of ratification; and because, we are given to understand, that other actions are pending against the same defendants, resting upon the conduct of the same agent. Our own case of Miller & Co. vs. Sims & Askford, (2 Hill, 479,) was cited here, as it was cited and recognized on the circuit. If we discard all observation as to distinguishing particulars in that, as that it was a question of ratification by an adult of his acts as a minor, established (it was said) by “ slight circumstances,” as held by Cheshire vs. Barrett, 4 McC., 241, it may be sufficient to remark, that there, the instruction to the jury was, that the acts proved did not amount ta a confirmation, while the Appeal Court thought they tended strongly to show it, “though perhaps” (said the Court) “ they are not so conclusive as to be unsusceptible of explanation. On this part of the case we shall conclude nothing, but leave it for future explanation.” In the present instance no such instruction was given to the jury; and this Court is incompetent to fix for them the interpretation of inconclusive facts.
The motion for a new trial is refused.
O’Neall, Wardlaw and Glover, JJ., concurred.

Motion dismissed.